UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA ANTHONY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01621-JPH-MJD |
| | ) | |
| SAINT SUSANNA SCHOOL, | ) | |
| PLAINFIELD COMMUNITY SCHOOL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Andrea Anthony enrolled her daughter, E.A., at Saint Susanna Catholic School and requested disability accommodations.  Shortly after the school year started, Saint Susanna removed E.A. from the school and referred Ms. Anthony to the Plainfield Community School Corporation.  Ms. Anthony filed this case against Saint Susanna and Plainfield alleging violations of the Americans with Disabilities Act ("ADA"), Individuals with Disabilities Education Act ("IDEA"), and Indiana state law.  Saint Susanna and Plainfield have filed motions to dismiss for failure to state a claim.  Dkt. [31]; dkt. [33].  For the reasons below, those motions are **GRANTED**.

**I.**
**Facts and Background**

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

1

In July 2025, Ms. Anthony met with Saint Susanna Catholic School's principal, Katie Weaver, about enrolling her daughter, E.A., using an Indiana Choice Scholarship through Indiana's school voucher program.  Dkt. 27 at 7.  Ms. Anthony "fully disclosed E.A.'s diagnosed disability, her therapy needs, and existing medical orders for speech therapy."  *Id.*  Saint Susanna told Ms. Anthony that E.A.'s needs could be met "through appropriate coordination."  *Id.*  Later that month, Saint Susanna "received E.A.'s most recent Individualized Education Program ("IEP") records . . . documenting her speech and learning needs and prior accommodations."  *Id.*  Saint Susanna, however, did not start coordinating services.  *Id.*

In August 2025, shortly after the school year started, Ms. Anthony met with Ms. Weaver and other Saint Susanna staff to discuss E.A.'s progress and needs.  *Id.* at 8.  But instead of "working toward accommodations or service coordination," Saint Susanna discussed removing E.A. from the school and making the Plainfield Community School Corporation responsible for E.A.'s services.  *Id.*  The next day, Ms. Weaver emailed Ms. Anthony that Saint Susanna "had limited capacity to address disability-related needs" and offered to reimburse tuition and uniform costs and connect her with Plainfield.  *Id.* at 9.  Later that week, Plainfield told Ms. Anthony that it would not provide services to E.A. unless Ms. Anthony withdrew her from Saint Susanna and enrolled her in a Plainfield public school.  *Id.* at 10.  Saint Susanna then notified Ms. Anthony that E.A. was being removed from the school and that law enforcement would be called if Ms. Anthony tried to return.  *Id.* at 10–11.

Ms. Anthony had "arranged her work schedule, medical appointments, and caregiving responsibilities around the expectation that E.A. would have a stable school placement and access to necessary services." *Id.* at 8.  Her interactions with Saint Susanna in August caused her "fear and anxiety, interfered with her ability to work," led to financial strain from out-of-pocket expenses, and exacerbated her Major Depressive Disorder.  *Id.* at 9–12.

Ms. Anthony filed this case in August 2025, dkt. 1, and amended her complaint in December 2025, dkt. 27.  That second amended complaint, *id.*, is the operative complaint.  Dkt. 30.  She alleges claims on behalf of herself under the ADA, IDEA, and Indiana state law.  *Id.* at 2–3, 12–19.  Defendants filed motions to dismiss.  Dkt. 31; dkt. 33.

## II.
### Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.,* 8 F.4th 581, 586 (7th Cir. 2021),

3

"but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616. "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

### III.
### Analysis

Ms. Anthony brings claims against Saint Susanna and Plainfield, alleging that they "unlawfully retaliated against [her] and interfered with her protected activity" in violation of the ADA, IDEA, and Indiana state law.[1]  Dkt. 36 at 1.

#### A. ADA Retaliation and Interference Claims

#### 1. Saint Susanna

Ms. Anthony brings her ADA claim under Title V, alleging that she engaged in protected activity by advocating for E.A. to receive the special-

---

[1] The second amended complaint also briefly refers to the Rehabilitation Act, though it does not identify a Rehabilitation Act claim.  Dkt. 27 at 2, 4, 14–21.  And after Defendants argued that any potential Rehabilitation Act claim must be dismissed, dkt. 32 at 1, 15–16; dkt. 34 at 17–19, Ms. Anthony did not address the Rehabilitation Act in her responses, except for a passing statement that she alleged "violations of Section 504," *see* dkt. 35 at 16; dkt. 36.  The Court therefore does not understand Ms. Anthony to raise a Rehabilitation Act claim, waiving such a claim.  *See Bradley v. Village of Univ. Park, Ill.*, 59 F.4th 887, 897 (7th Cir. 2023); *Soo Line R.R. Co. v. Consol. R. Corp.*, 965 F.3d 596, 602 (7th Cir. 2020) ("Litigants are obligated to present to the district court both factual and legal arguments in support of their positions.").

education services she needed.  Dkt. 35 at 4–5; dkt. 36 at 1, 4–6.  Title V of the ADA prohibits (1) discrimination for "oppos[ing] any act or practice made unlawful" by the ADA, and (2) coercion, intimidation, threats, or "interfere[nce] with any individual in the exercise or enjoyment of . . . or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected" by the ADA.  42 U.S.C. § 12203.

To prevail on this claim, Ms. Anthony must show that she engaged in activity protected by the ADA before the alleged retaliation or interference.  *Id.*; *see Bruno v. Wells–Armstrong*, 93 F.4th 1049, 1055 (7th Cir. 2024) ("[T]he ADA protects from retaliation [and interference] those who have engaged in activities protected by the ADA," so an ADA plaintiff "must show . . . [p]rotected activity."); *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017).

Ms. Anthony alleges that her advocacy for E.A.'s accommodations was protected activity under Title III of the ADA, which prohibits disability discrimination by places "of public accommodation," including private schools.  42 U.S.C. § 12182(a); 42 U.S.C. § 12181(7)(J).  Title III does not, however, apply "to religious organizations or entities controlled by religious organizations."  42 U.S.C. § 12187.

Saint Susanna argues that Ms. Anthony's advocacy for E.A. was not protected activity because Saint Susanna is exempt from Title III as a religious

organization.  Dkt. 32 at 10–13.[2]  Ms. Anthony responds that the religious-organization exemption does not bar her Title V retaliation and interference claims based on her request for disability accommodations and services for E.A.  Dkt. 27 at 14–15, 17; dkt. 35 at 4–5.

Ms. Anthony admits that Saint Susanna is a private Catholic school, dkt. 27 at 2–5, and does not dispute that it is a religious organization exempt from Title III, dkt. 35 at 4–5, 16.  Under that exemption, Saint Susanna could not have violated Title III's prohibition on discrimination based on disability.  *See* 42 U.S.C. § 12187; *see* 28 C.F.R. Pt. 36 App. C ("The ADA's exemption of religious organizations and religious entities controlled by religious organizations is very broad, encompassing a wide variety of situations.").[3]  And without Title III, Ms. Anthony's Title V claim does not allege an underlying ADA violation or that she engaged in protected activity.  *See Bruno*, 93 F.4th at 1056 (explaining that if activities "could not have been protected activity under the ADA," they cannot support an ADA retaliation claim); *Frakes*, 872 F.3d at 551

---

[2] Saint Susanna briefly argues that Ms. Anthony lacks standing for her ADA claims because she was seeking services for E.A. rather than for herself.  *See* dkt. 32 at 6–7.  But she has standing because Title V prohibits retaliation and interference against "any individual," including someone advocating someone else's ADA rights.  42 U.S.C. § 12203; *see Scheidler v. Indiana*, 914 F.3d 535, 543 (7th Cir. 2019).

[3] While the religious-organization exemption is an affirmative defense to a Title III claim, the underlying ADA protection is an element of Ms. Anthony's Title V claim.  *See Bruno*, 93 F.4th at 1055–56.  Even if the exemption were an affirmative defense that Saint Susanna should have pleaded and raised in a motion for judgment on the pleadings under Rule 12(c), that does not affect this case because Ms. Anthony does not contest the exemption, so the relevant facts have been presented with the complaint and motion to dismiss.  *Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 n.2 (7th Cir. 2014); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

(same, for ADA interference claim); *cf. Scheidler v. Indiana*, 914 F.3d 535, 542 (7th Cir. 2019).  Saint Susanna's Title III exemption thus prevents Ms. Anthony from showing the required underlying "statutorily protected activity" for her Title V retaliation and interference claims.  *Bruno*, 93 F.4th at 1055–56.

Ms. Anthony's ADA claims against Saint Susanna are therefore dismissed.  *See Gregg v. Park Ridge Mobile Home Ct.*, No. 10-cv-3313, 2011 WL 4459701 at *4 (C.D. Ill. Sept. 26, 2011) (dismissing Title V claim because a residential facility was not a place of public accommodation, so "Plaintiff has not alleged he exercised any right granted or protected by the ADA");  *Powell v. Houtsma*, No. 04-cv-4831, 2005 WL 464687 at *3 (N.D. Ill. Feb. 25, 2005) (dismissing Title V claim that did not allege "any act or practice made unlawful by the ADA" because a private home was not a place of public accommodation under Title III).

### 2. Plainfield

Plainfield argues that Ms. Anthony's ADA retaliation claim against it must be dismissed because the second amended complaint alleges only that Saint Susanna, not Plainfield, took an adverse action with respect to E.A.  Dkt. 34 at 12.[4]  Ms. Anthony responds that while it was Saint Susanna that expelled E.A., Plainfield also violated the ADA by conditioning services for E.A. on withdrawal from Saint Susanna.  Dkt. 36 at 5; dkt. 38 at 2–5.

---

[4] Plainfield does not expressly address Ms. Anthony's ADA interference claim, but it similarly requires an action that "interfere[s] with . . . the exercise or enjoyment of" a right under the ADA, so the Court addresses retaliation and interference together.  *See Frakes*, 872 F.3d at 550.

Ms. Anthony must show that she engaged in a statutorily protected activity and suffered an adverse action, and that there was a causal connection between the protected activity and the adverse action. *See Koty v. DuPage Cnty., Ill.*, 900 F.3d 515, 519 (7th Cir. 2018); *Frakes*, 872 F.3d at 550. Ms. Anthony argues that Saint Susanna took an adverse action against E.A. when it expelled her and threatened to involve law enforcement. Dkt. 36 at 5. Saint Susanna's actions, however, cannot support a claim against Plainfield. *See Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019). Ms. Anthony nevertheless argues that Plainfield is responsible because it communicated with Saint Susanna immediately before E.A. was expelled. Dkt. 36 at 8. But in this context, communication between a private school and public school district about a child requesting disability accommodations does not plausibly suggest a joint effort to expel E.A. from Saint Susanna. *See Twombly*, 550 U.S. at 554, 557 (explaining that actions just as consistent with lawful activity as unlawful do not plausibly allege joint conduct); *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Even before [*Twombly* and *Iqbal*], a bare allegation of a conspiracy was not enough to survive a motion to dismiss for failure to state a claim.").

For Plainfield's own actions, Ms. Anthony alleges that it told her, on August 14, 2025, that "it would not proceed with disability-related services for E.A. unless [she] first withdrew" E.A. from Saint Susanna. Dkt. 27 at 10, 12. But she also alleges that Plainfield offered to schedule a service plan meeting for E.A. the very next day, on August 15. *Id.* Moreover, Plainfield has provided

its email to Ms. Anthony offering to have that meeting on August 15 and informing her that "if you decide to withdraw [E.A.] from Saint Susanna, please know that Plainfield Schools stand ready to provide a free appropriate public education at any time."  Dkt. 38-1.[5]

Ms. Anthony therefore has not plausibly alleged that Plainfield "froze [her] out" of efforts to accommodate or receive services for E.A.'s disability. *Stanek v. St. Charles Comm. Unit. Sch. Dist. No. 303*, 783 F.3d 634, 643 (7th Cir. 2015); *see Barton v. Zimmer, Inc.,* 662 F.3d 448, 456 (7th Cir. 2011) (The allegedly adverse action "must be severe enough to dissuade" the exercise of statutory rights.).  Nor has Ms. Anthony alleged that Plainfield failed to follow through with the service-plan meeting or its responsibilities to E.A. after she was expelled from Saint Susanna.  *See* dkt. 27 at 10, 12; *Ajayi v. Aramark Business Servs., Inc.,* 336 F.3d 520, 531 (7th Cir. 2003) ("An unfulfilled threat, which results in no material harm, is not materially adverse.").

Because Ms. Anthony has not plausibly alleged that Plainfield took an adverse action against E.A., her ADA claims against Plainfield are dismissed.

### B. IDEA Claim

#### 1. Saint Susanna

Liberally construed, Ms. Anthony's second amended complaint alleges that Saint Susanna violated the IDEA by interfering with Plainfield's ability to support E.A. and by retaliating against her for seeking services from Plainfield.

---

[5] Ms. Anthony refers to Plainfield's communication in the second amended complaint, dkt. 27 at 10, so the Court considers it for Plainfield's motion to dismiss, *Brownmark Films*, 682 F.3d at 690.

Dkt. 27 at 15, 18–19.  Saint Susanna argues that this claim must be dismissed because the IDEA does not apply to private schools.  Dkt. 32 at 13–15.  Ms. Anthony concedes that the IDEA does not impose "service obligations on a private religious school," but contends that Saint Susanna "retains independent obligations not to discriminate, retaliate, or interfere with protected activity."  Dkt. 35 at 2, 11.

"The goals of IDEA include ensuring that all children with disabilities have available to them a free appropriate *public* education."  *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 523 (2007) (emphasis added) (quoting 20 U.S.C. § 1400(d)(1)(A)–(B)).  IDEA therefore makes "the proper defendant" in an IDEA action "the 'local educational agency,'" *Stanek*, 783 F.3d at 640, which "means a public board of education or other public authority," 20 U.S.C. §§ 1413, 1401(19)(A)).  IDEA does not allow claims against a private school, so Ms. Anthony's IDEA claim against Saint Susanna is dismissed.  *See id.*; *Ullmo v. Gilmour Academy*, 273 F.3d 671, 679 (6th Cir. 2001) (holding that the IDEA's text "leaves no room" for a private school to be subject to IDEA liability).

### 2. Plainfield

Plainfield argues that Ms. Anthony's IDEA claim must be dismissed because she does not allege a violation of her own IDEA rights and because Plainfield met its requirements under the IDEA.  Dkt. 34 at 12–16.  Ms. Anthony's response does not address the IDEA or this claim, instead arguing only that she has pleaded plausible retaliation and interference claims.  *See* dkt. 36 at 1, 3–4, 11.

Because Ms. Anthony responded to Plainfield's argument regarding the ADA but not the IDEA, she has abandoned her IDEA claim against Plainfield. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons [a claim] by not responding to alleged deficiencies in a motion to dismiss"); *accord Marcure v. Lynn*, 992 F.3d 625, 632 (7th Cir. 2021) (holding that while courts may not grant an unopposed Rule 12(b)(6) motion "solely because there is no response," the decision to address some claims and not others in a response can "be understood as waiver"); *Soo Line R.R. Co.*, 965 F.3d at 602.[6]

### C. State-Law Claim under Indiana Code § 20-51-4-3

Indiana's school voucher program, the "Choice Scholarship Program," provides "vouchers to eligible parents for their use in sending their children to private schools." *Meredith v. Pence*, 984 N.E.2d 1213, 1216–20 (Ind. 2013) (addressing Indiana Code § 20-51-4-1 *et seq.*). Ms. Anthony alleges that Saint Susanna[7] violated that program's provisions by discriminating based on disability. Dkt. 27 at 17–18. Saint Susanna argues that this claim must be dismissed because the governing statute does not prohibit disability discrimination. Dkt. 32 at 15. Ms. Anthony responds, without supporting authority, that "[u]nder Indiana Code § 20-51-4-3, a nonpublic school that

---

[6] Because Ms. Anthony's claims against Plainfield are dismissed, the Court does not address its argument that Ms. Anthony failed to comply with the notice requirement in Indiana's Claims Against Public Schools Act. *See* dkt. 34 at 5–6.

[7] While Plainfield briefly addresses this claim, *see* dkt. 34 at 7–8, Ms. Anthony alleged it against only Saint Susanna, *see* dkt. 27 at 13, 16. Moreover, Ms. Anthony has not alleged that Plainfield is an "eligible school" that accepts Choice Scholarship funds. *See* Indiana Code § 20-51-4-3.

11

accepts Choice Scholarship funds may not discriminate against students on the basis of disability." Dkt. 35 at 8–9.

Indiana's school voucher law prohibits discrimination based on "race, color, or national origin," but not based on disability. Ind. Code § 20-51-4-3. Ms. Anthony's claim alleging disability discrimination under this statute is therefore dismissed. *See Mi.D. v. State*, 57 N.E.3d 809, 812 (Ind. 2016) ("If [a statute's] language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it does say and what it does not say.").

## IV.
## Conclusion

Saint Susanna's and Plainfield's motions to dismiss are **GRANTED**. Dkt. [31]; dkt. [33]. Ms. Anthony **SHALL HAVE THROUGH August 18, 2026** to show cause why final judgment should not issue consistent with this order.

**SO ORDERED.**

Date: 7/27/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

12